MITCHELL COMISKEY, an Infant, by LEO COMISKEY, His Guardian, et al., Respondents, v MYRON ARLEN et al., Appellants. LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor-Appellant.

Second Department, December 20, 1976

*Martin, Clearwater & Bell (Steven DeMaggio* of counsel), for Myron Arlen, appellant.

*Bower & Gardner (Barbara Pilo* of counsel), for Brooklyn Jewish Hospital, appellant.

*Fuchsberg & Fuchsberg (Bernard Turkewitz* and *Norman E. Frowley* of counsel), for respondents.

*Louis J. Lefkowitz, Attorney-General (Daniel M. Cohen* and *Samuel A. Hirshowitz* of counsel), in his statutory capacity under section 71 of the Executive Law, intervenor-appellant.

SUOZZI, J. The issue presented for review on this appeal is whether subdivision 8 of section 148-a of the Judiciary Law is

unconstitutional. The Trial Term held that subdivision 8 violated plaintiffs' constitutional right to a meaningful jury trial. We reverse and hold that subdivision 8 of section 148-a of the Judiciary Law is constitutional.

This is a medical malpractice action arising out of a surgical procedure performed by the defendant doctor on the infant plaintiff at the defendant hospital. At the completion of discovery and all other preliminary proceedings, the case came on for a hearing before a medical malpractice mediation panel (the "panel") pursuant to section 148-a of the Judiciary Law.

Section 148-a of the Judiciary Law provides, in essence, for the following procedures:

All hearings are held before a panel of three, consisting of a Justice of the Supreme Court, a physician and an attorney (subd 2). The panel doctor and attorney are chosen from a list prepared by the Presiding Justice of each Appellate Division (subd 2, pars [a], [b]). Prior to the hearing date any party may file a written objection to the designation of a doctor or attorney, which objection shall be decided by the Justice presiding as a member of the panel (subd 2, par [d]). The specialty involved is determined and communicated to the court by "the Medical Society of the State of New York, a county medical society and/or the New York Academy of Medicine", after a review of material submitted to the court (pleadings, bills of particulars and medical and hospital records) (subd 3, pars [a], [b]). The hearing itself is informal and without a stenographic record (subd 4). The panel "may request an additional doctor having particular expertise in the specialty involved to assist it in the determination" (subd 6).

Subdivision 8 of section 148-a provides: "8. If the three members of the panel concur as to the question of liability, a formal written recommendation concerning such question of liability shall be signed by the panel members and forwarded to all parties. In such event, the recommendation shall be admissible in evidence at any subsequent trial upon the request of any party to the action. The recommendation shall not be binding upon the jury or, in a case tried without a jury, upon the trial court, but shall be accorded such weight as the jury or the trial court chooses to ascribe to it.

"If the recommendation is read to the jury or by the trial court, the doctor member or the attorney member of the panel, or both of them, may be called as a witness by any party with reference to the recommendation of the panel only.

The party calling such witness or witnesses shall pay their reasonable fees and expenses."

In the case at bar, the panel considered all of the evidence submitted, and the arguments of the parties relating thereto, and determined unanimously that no malpractice was involved. The action was then placed on the regular jury calendar. Before the case could be assigned for trial, however, plaintiffs moved to have the panel's recommendation suppressed.

The Trial Term held that subdivision 8 of section 148-a of the Judiciary Law, which provides for the admissibility of the panel's recommendation into evidence at the trial, was unconstitutional and, accordingly, ruled that it could not be introduced at the trial. In its memorandum decision, the Trial Term stated that "[t]o allow the Panel's recommendation to be introduced into evidence would nullify plaintiff's constitutional right to a meaningful jury trial." It was the trial court's view that "to anticipate anything less than a full and complete adoption by the jury of the Panel's recommendation as to liability is unrealistic and strains credulity."

In my view, the Trial Term erred in holding subdivision 8 of section 148-a of the Judiciary Law to be unconstitutional.

Initially, I agree with the contention of the Attorney-General (who has appeared to defend the constitutionality of the statute) that the Trial Term acted prematurely in ruling on the constitutionality of subdivision 8. Constitutional questions should not be reached unless their disposition is necessary. Any constitutional objection to the procedures of the panel would be better treated at the trial, when, pursuant to the statute, the panel's recommendation can be admitted into evidence at the request of any party and be given its proper weight in accordance with the Trial Judge's instructions. Indeed, this latter procedure was utilized in the recent case of *Halpern v Gozan* (85 Misc 2d 753), which also originated in Queens County. In *Halpern v Gozan (supra),* the Trial Term (LEONARD FINZ, J.) held that subdivision 8 of section 148-a of the Judiciary Law was constitutional. That ruling was made after completion of a trial during which a panel's recommendation finding liability was admitted into evidence. In *Halpern,* the jury found for the plaintiff. At the trial's conclusion, the defendant moved to set the verdict aside, raising a constitutional challenge to subdivision 8 of section 148-a of the

Judiciary Law. The trial court denied the motion and held that the statute was constitutional.

Accordingly, and in view of the fact that the constitutional issue is now before us, and in view of the fact that there is a conflict on the issue between two Trial Terms in Queens County—the holding in *Halpern* was never appealed—the constitutional issues raised herein will now be dealt with on their merits.

A finding of unconstitutionality should not be lightly undertaken by courts of first instance. "A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where the invalidity of the act is apparent on its face" (see McKinney's Cons Laws of NY, Book 1, Statutes, § 150, pp 312-313, and the cases cited thereat).

The whole thrust of the Trial Term's decision was its assumption that no jury could evaluate a medical malpractice panel's recommendation with objectivity, or follow a trial court's instructions regarding the weight to be given it. That assumption was unwarranted and cannot serve as the basis for a declaration of unconstitutionality since "[h]istorically, jurors for the most part have proven their independence. They guard their roles with a unique jealousy" *(Halpern v Gozan, supra,* p 759).

More importantly, a finding of unconstitutionality herein is precluded by the decision of our Court of Appeals in *Montgomery v Daniels* (38 NY2d 41), and by the decision of the Supreme Court of the United States in *Matter of Peterson* (253 US 300).

In *Montgomery v Daniels (supra),* the Court of Appeals upheld the constitutionality of article 18 of the Insurance Law ("the no-fault statute"), and specifically stated (p 53): "We conclude that the partial abolition here of an accident victim's right to sue for damages caused by another's negligent action does not deprive the victim of a right or interest protected by the due process clause of either our State or the Federal Constitution."

The court, in *Montgomery,* specifically rejected plaintiffs' argument that the no-fault statute (1) denied them due process of law by unconstitutionally abrogating their common-law

right to sue in tort without providing an adequate substitute remedy and (2) infringed on their right to a jury trial.

In rejecting these attacks on the no-fault statute, the court restated the holding of the Supreme Court in *Munn v Illinois* (94 US 113, 134) that "[a] person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances" (see, also, *Arizona Employers' Liab. Cases,* 250 US 400, 421).

In discussing the plaintiffs' claim that the no-fault statute had infringed on their right to a jury trial, the court, in *Montgomery,* cited *Mountain Timber Co. v Washington* (243 US 219). In the latter case, the Supreme Court considered challenges made under the Seventh Amendment to the Federal Constitution (which preserves the right to a jury trial in language similar to that contained in the New York State Constitution) to the enactment of a workmen's compensation law abrogating an employee's right at common law to recover in negligence from his employer. The Supreme Court stated (p 335): "we find nothing in the act that excludes a trial by jury. As between employee and employer, the act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury".

Moreover, section 14 of article I of the New York State Constitution, in adopting the common law in effect on April 19, 1775, goes on to state explicitly, "subject to such alterations as the legislature shall make concerning the same."

Assuming, *arguendo,* that the Legislature had a duty to provide an adequate substitute remedy for any cause of action properly abrogated by it (see *New York Cent. R. R. Co. v White,* 243 US 188, 201), the court, in *Montgomery,* held that the no-fault statute had, by its terms, provided an adequate remedy for any cause of action which had been eliminated by the legislation.

The legislation under attack in the case at bar, i.e., subdivision 8 of section 148-a of the Judiciary Law, constitutes a far

less drastic interference with an existing cause of action than that which was approved in *Montgomery.* Under the statute herein, the jury still remains the ultimate arbiter of the factual questions raised at the trial. The panel's recommendation is, in effect, an expert opinion which is to be evaluated by the jury in the same manner as it would evaluate any other expert opinion, as directed by the instructions of the Trial Justice. At most, subdivison 8 constitutes another legislative exception to the hearsay rule. Under these circumstances, the Legislature has merely amended the rules of evidence, which is within its power to do (see *Munn v Illinois,* 94 US 113, *supra).*

Indeed, in the case of *Matter of Peterson* (253 US 300, *supra),* the Supreme Court held that a Federal District Court, of its own inherent power and without specific statutory authority, could refer factual determinations to a nonjudicial court-appointed officer, whose report could be introduced at a jury trial as prima facie evidence of the facts found and conclusions reached. The court, in *Peterson,* stated (pp 309-311):

"The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained. * * * It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. * * *

"Nor can the order be held unconstitutional as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as *prima facie* evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report may be put. An order of a court, like a statute, is not unconstitutional because it endows an official act or finding with a presumption of regularity or of verity."

We are aware of the case of *Wright v Central Du Page Hosp Assn.* (63 Ill 2d 313 [347 NE2d 736]), recently decided by the Supreme Court of Illinois, in which a medical malpractice panel statute was ruled unconstitutional. The Illinois statute (sections 58.2 through 58.10 of the Illinois Civil Practice Act) provided for a panel whose composition was similar to the one at bar.

Section 58.6 of the Illinois statute is concerned with procedure. Proceedings before the panel are to be "adversary, and each party may call and cross examine witnesses and introduce evidence as at a trial in the circuit court." The panel has the power to subpoena, "to be exercised as in the circuit court," and it "may call witnesses, examine evidence, call for additional or particular evidence, and may examine or cross examine witnesses as it may determine to be appropriate." The Circuit Judge is to preside over the proceedings and decide procedural and evidentiary issues, and the proceedings may be conducted in any court in the judicial circuit, as determined by the panel. Section 58.7 provides that the panel shall make a "determination on the issue of liability and, if liability is found, on the issue of fair and just compensation for damages". The determinations of the panel are to be made in a written opinion, stating its conclusions of fact and conclusions of law, and a dissenting member may file a written dissent.

Section 58.8 governs the effect of a decision of the panel. If the parties agree in writing to be bound by the determination of the panel, its decision is binding and conclusive, and judgment may be entered thereon. If the parties do not agree to be bound by the panel's determination and the panel's decision is unanimous, a party must reject the decision in writing within 28 days of the receipt of service of the written opinion or be deemed to have accepted it. Whenever the parties have not unanimously agreed to be bound by the determination of the panel and have not unanimously accepted the determination, the panel Judge is to conduct a pretrial conference and the case is to proceed to trial, as would any other civil case. The determination of the panel is not admissible at any subsequent trial in the circuit court.

The Supreme Court of Illinois held that the statute violated the Illinois Constitution in that it vested essentially judicial functions in nonjudicial personnel. The Illinois court noted (p 739) that, apart from evidentiary issues (which the Judge only

could rule on, subject to some dilution by virtue of the statutory provision that "[t]he law of evidence shall be followed, except as the panel in its discretion may determine otherwise" [§ 58.6]), the power and function of the lawyer and physician member of the panel were the same as that of the Judge in that the panel, as a unit, was vested with the authority to apply the substantive law, a judicial function. Thus, the lawyer and physician, under the Illinois statute, had the power to exercise a judicial function and outvote the Judge. As heretofore noted, under the Illinois statute, if the parties agreed to be bound by the determination of the panel, a 2 to 1 vote would be sufficient to have judgment entered thereon. In view of this constitutional infirmity, the Illinois Supreme Court further stated (p 324): "it follows that the procedure prescribed therein as the prerequisite to jury trial is an impermissible restriction on the right of trial by jury guaranteed by * * * the Illinois Constitution."

In our view, the provisions of the Illinois statute are distinguishable from those at bar. Under the Illinois statute, the panel's recommendation as to liability and the amount of damages is formulated after a full adversary hearing and can take effect, even without unanimity of the panel, when the parties agree to be bound by the panel's determination. Most importantly, under the Illinois statute, the panel's recommendation, when utilized (i.e., when the parties have agreed to be bound by it, or have unanimously accepted it), serves as the sole basis for the entry of judgment thereon; otherwise the panel's determination is not admissible at any subsequent trial. In sum, under the Illinois statute, the malpractice panel's recommendation is never subjected to the jury's scrutiny; it either serves as the basis for the entry of judgment without any interaction from the jury, or is not admissible at all at the trial.

Under the New York statute, the determination of the medical malpractice panel must be unanimous to be admissible and it can never be the sole basis for the entry of a judgment. The panel's determination may be admitted into evidence and is to be given that weight which the jurors choose to ascribe to it. The jury is left as the final arbiter of the fact question in the New York statutory scheme, which, on that basis, is distinguishable from the Illinois statute. The particular infirmities of the Illinois statute were also acknowledged by the Illinois Supreme Court when it noted (p 324): "In

so holding, however, we do not imply that a valid pretrial panel procedure cannot be devised" (see, also, *Carter v Sparkman,* 335 So 2d 802 [Fla.], where a medical malpractice panel statute was upheld as constitutional by the Supreme Court of Florida).

If the impairment of the right to a jury trial were the only challenge to the New York medical malpractice panel statute, our discussion would terminate at this point. However respondents, in their brief, have raised several other bases of attack against the statute. Specifically, they claim that the statute violates the due process and equal protection clauses.

In our view, plaintiffs' arguments are without merit.

This court recently had the opportunity to review certain nonconstitutional issues relating to the medical malpractice panel statute (see *Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169). While in *Kletnieks* we did not specifically deal with the constitutional question raised herein, we did give our implicit sanction to the general thrust of the statute. After reviewing the history and nature of the medical malpractice crisis in this State, we stated (p 173): "Thus, section 148-a of the Judiciary Law represents a legislative innovative concept geared toward informal resolution of malpractice actions and expeditious judicial resolution of those cases not initially resolved."

Moreover, in *Montgomery* (38 NY2d 41, *supra),* our Court of Appeals, in upholding the constitutionality of the no-fault statute, rejected numerous due process arguments which were raised against that statute, including that relating to denial of access to the judicial system. In reaching its conclusion, the court dealt with the threshold question of whether the statute met the standard of substantive due process (P 54): "In *West Coast Hotel Co. v Parrish* (300 US 379, 391) the United States Supreme Court stated that 'regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process.' Thus where a statute is challenged on nonprocedural grounds as violative of due process of law we have consistently asked the question whether there is ' " 'some fair, just and reasonable connection' between it and the promotion of the health, comfort, safety and welfare of society" ' *(Nettleton Co. v Diamond,* 27 NY2d 182, 193, app dsmd *sub nom. Reptile Prods. Assn. v Diamond,* 401 US 969; *People v Pagnotta,* 25 NY2d 333, 337; *People v Bunis,* 9 NY2d 1, 4; *Defiance Milk Prods. Co. v Du Mond,* 309 NY 537, 541.) In

approaching this question, the court has recognized that as a matter of substantive law every legislative enactment is deemed to be constitutional until its challengers have satisfied the court to the contrary *(People v Broadie,* 37 NY2d 100, 117; *People v Pagnotta, supra; Matter of Van Berkel v Power,* 16 NY2d 37, 40; *I. L. F. Y. Co. v Temporary State Housing Rent Comm.,* 10 NY2d 263, 269, app dsmd 369 US 795)."

The Court of Appeals noted that within the police powers of the State was the power to regulate the use of the motor vehicle, as well as the issue of liability arising out of that use, and concluded that the no-fault statute was a rational means of remedying certain defects in the fault-based tort system for compensating automobile accident personal injury claimants.

In *Montgomery,* the court similarly rejected the claim that plaintiff's access to the courts was curtailed by virtue of the no-fault legislation, thus violating the due process and equal protection clauses.

In the latter regard, plaintiff argued in *Montgomery,* that in view of this important right, the no-fault statute could be sustained only if the State could demonstrate that the statutory provisions were necessary to the advancement of a compelling State interest and, additionally, only if it could be shown there are no less restrictive means by which the advancement of such an interest could be achieved. The court, in *Montgomery,* held that this strict equal protection test could be applied only where the challenged law created classifications which impaired some fundamental constitutional rights. It ruled that plaintiff's reliance on a fundamental right of access to the courts was misplaced, stating (p 60): "Likewise plaintiffs' reliance. on *Boddie v Connecticut* (401 US 371) for the claim that article 18 unconstitutionally denies to them a fundamental right of 'access to the courts' is misplaced. In *Boddie* and in subsequent cases clarifying *Boddie* (e.g., *Ortwein v Schwab,* 410 US 656; *United States v Kras,* 409 US 434) the Supreme Court has made it clear that access to the courts in and of itself is not an independent constitutional right. The right to access to the courts will be accorded special constitutional protection only where the right sought to be asserted through such access is a right recognized in the constitutional sense as carrying a preferred status and so entitled to special protection and then only where there is no alternative forum in which vindication of that constitutionally protected right may be sought. In *Boddie,* the court found that

access to the courts was 'the exclusive precondition to the adjustment of a fundamental human relationship' (p 383)— that of márriage—and concluded that a State may not 'preempt the right to dissolve this legal relationship without affording all citizens aċcess to the means it has prescribed for doing so' (p 383). By contrast the Supreme Court has held that access to the courts for the resolution of other claims (involving rights not subject to special constitutional protection) may be denied if there is a rational basis therefor; no proof is required of any compelling State interest or that the legislative choice of means of accomplishment was the least restrictive. *(Ortwein v Schwab,* 410 US 656, *supra* [$25 filing fee which operated to deprive appellants of opportunity to obtain appellate review of agency determination reducing welfare benefits]; *United States v Kras,* 409 US 434, *supra* [filing fee as precondition to petition court for discharge to bankruptcy].)"

Therefore, the no-fault statute had to be judged by the less stringent and more traditional equal protection test expressed in *Dandridge v Williams* (397 US 471, 485): "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' "

The reasoning of *Montgomery* is particularly applicable to the case at bar.

Regarding the validity of the subject legislation, the decisions in *Halpern (supra)* and *Kletnieks (supra)* recite very clearly the problem facing the Legislature. Section 148-a of the Judiciary Law, which created the medical malpractice panel, was enacted due to the urgent necessity to find a reasonable procedure for dealing with the crisis situation of increasing medical malpractice insurance rates. In enacting the statute, the Legislature stated that the purpose of its bill was "to deal comprehensively with the critical threat to the health and welfare of the State as a result of the lack of adequate medical malpractice insurance coverage at reasonable rates" (Memorandum of State Executive Dept., NY Legis Ann, 1975, p 419; see, also, *Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169, 172-173, *supra; Halpern v Gozan,* 85 Misc 2d 753, 755-756, *supra).*

In sum, the net effect of the statute herein, and in particular subdivision 8, has been to furnish the jury in a malpractice action with the opinion of an expert panel. Two of the three members of the panel can be called by either party, thus giving the jury further guidance and insight into a complex and difficult area. The jury still remains, under the statute, as the ultimate arbiter of the factual questions raised. Under these circumstances, it is clear that the Legislature, in enacting section 148-a of the Judiciary Law, has merely amended the rules of evidence, which is within its power to do (see *Munn v Illinois,* 94 US 113, *supra).* Under the same reasoning, the claim that the statute unconstitutionally denies a fundamental right of "access to the courts" is inappropriate (see *Montgomery v Daniels, supra; cf. Boddie v Connecticut,* 401 US 371, *supra).* The claim that the statute violates the equal protection clause must also be rejected. The classification in the statute has a rational basis and must be upheld (see *Dandridge v Williams,* 397 US 471, *supra).*

Accordingly, the order should be reversed insofar as appealed from and the branches of the plaintiffs' motion which sought to declare subdivision 8 of section 148-a of the Judiciary Law unconstitutional and to suppress the panel's recommendation should be denied and the said subdivision 8 should be declared to be constitutional. The panel's recommendation may be admitted into evidence at the trial of this action, upon the request of any party to the action.

HOPKINS, Acting P. J., MARTUSCELLO and DAMIANI, JJ., concur.

Order insofar as appealed from reversed, without costs or disbursements, and the said branches of plaintiffs' motion are denied.