Carl W. HINES and Andrew J. Fetsch, as Special Administrators of the Estate of Paul J. Hines, Carl W. Hines, Individually and Karen Kay Hines, Sandra Carol Hines and William Walter Hines by Carl W. Hines, their natural guardian and best friend, Plaintiffs,

v.

ELKHART GENERAL HOSPITAL and Dr. E. L. Fosbring, Defendants.

No. S 78–133.

United States District Court,
N. D. Indiana,
South Bend Division.

Jan. 15, 1979.

J. B. Smith, Timothy F. Kelly, and Randall J. Nye, Beckman, Kelly & Smith, Hammond, Ind., for plaintiffs.

Arthur A. May and Thomas J. Hall, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This action presently pends before this Court for consideration of the defendants' Motion to Dismiss the Plaintiffs' complaint. That complaint, filed in this Court and with the Indiana Insurance Commissioner on July 3, 1978, purports to state a claim against the defendants for a medical malpractice based upon the defendants' alleged negligent care and treatment of the plaintiffs' decedent on or about July 11, 1976. The defendants' Motion to Dismiss relies upon the express provision of the Indiana Medical Malpractice Act of 1975 (hereinafter referred to as the Act and codified as I.C. 16–9.5–9–1 et seq.) which requires that:

> "No action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel."

I.C. 16–9.5–9–2.

In reply to the defendants' Motion to Dismiss, the plaintiffs have raised issue with the applicability of the Act to cases filed in Federal District Courts in Indiana pursuant to diversity jurisdiction and challenge the constitutionality of portions of the Act on various grounds. The plaintiffs have not, however, challenged either the defendants' status as a qualified health care provider under the Act or the obvious applicability of the prohibitory provisions of I.C. 16–9.5–9–2, supra, to this litigation.

The Act generally provides for the voluntary participation by renderers of medical care, as "health care providers," in a legislative mechanism which assures them of obtaining malpractice liability insurance coverage at a reasonable cost and assures the people of Indiana a guaranteed source of recovery if a qualified health care provider commits an act with malpractice for which compensation is deemed appropriate or necessary as a result of settlement or trial by jury. A Patient's Compensation Fund is established by the Act (I.C. 16–9.5–4–1) to assure complete funding of any compensation granted by settlement or jury verdict to the full extent of the limitation imposed by the Act and creates the Residual Malpractice Insurance Authority to provide malpractice liability coverage for health care providers who are otherwise acceptable risks (I.C. 16–9.5–8–1).

The Act further provides pre-litigation procedures to be followed in pursuit of claims such as that posed by the plaintiffs in this litigation. Upon the filing of a proposed complaint with the Indiana Insurance Commissioner, the applicable statute of limitations is tolled pending the appointment of a medical review panel composed of an advisory-attorney member and three health care providers, and the issuance of a pre-litigation liability determination by that body. After that written decision has been issued, the plaintiff may then proceed with litigation on his claim, including the right to trial by jury. The report of the medical review panel is admissible in any subsequent litigation but it shall not be conclusive, and either party may call any member of the panel as a witness at trial. Lastly, a claimant asserting the right to compensation for medical malpractice limited by a health care provider may not receive more than Five Hundred Thousand Dollars ($500,000.00) as compensation for his claim by way of either settlement or litigation.

The plaintiffs contend that the Act does not apply to actions filed in this court pursuant to its diversity jurisdiction. This argument is based upon the alternative grounds that the Act, by its own terms, does not apply in Federal Court and that state legislatures may not regulate procedure in the Federal District Courts.

## A. APPLICABILITY OF THE ACT TO FEDERAL DIVERSITY MALPRACTICE CLAIMS

▇ Plaintiffs strongly argue that the Act does not apply to claims filed in the

Federal District Courts of this State under diversity jurisdiction. To support this assertion, the plaintiffs first argue that the terms of the act itself exclude its applicability and support this argument by reciting fundamental rules of statutory construction and comparing the phrases "any court of this State" found in I.C. 16–9.5–9–2, quoted in its entirety above, and language found in I.C. 16–9.5–1–6 which provides that a claimant for medical malpractice may file a complaint: "in any court of law having requisite jurisdiction . . . ." This argument is totally devoid of merit.

When presented with a claim in diversity jurisdiction based upon substantive rights created by State law, a Federal District Court clearly qualifies as "any court of this State" (I.C. 16–9.5–9–2). In *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), Mr. Justice Frankfurter clearly enunciated that under such circumstances, a United States District Court is:

". . . in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State." 326 U.S. at 108–9, 65 S.Ct. at 1469–70.

Although the "outcome-determinative" test announced by the court in *Guaranty Trust* has since been replaced, this observation regarding the role of Federal District Courts in diversity jurisdiction remains valid. More recently, in a decision which, in light of the circumstances surrounding this claim and the pendency of similar claims in Indiana trial and appellate courts is particularly applicable, the Supreme Court observed:

"The underlying substantive rule involved is based on State law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in

effect, sitting as a state court." *Commissioner v. Estate of Bosch*, 387 U.S. 456 at 465, 87 S.Ct. 1776 at 1783, 18 L.Ed.2d 886 (1967).

It cannot be logically argued that the Act does not, by its own terms, apply to diversity claims pending before this Court. It should be noted that in *Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I.1978), the decision relied upon heavily by the plaintiffs and discussed further below, that court went to great lengths to interpret the intent of the Rhode Island Legislature to the effect that the procedures established by the Rhode Island Medical Malpractice Statute were to be applicable to diversity claims before it. See, 78 F.R.D. at 220.21, n. 4.

The Plaintiffs rely upon *Wheeler v. Shoemaker, supra*; and *Byrd v. Blue Ridge Rural Electric Co-op.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), to argue that the act improperly infringes upon the federal diversity jurisdiction of this Court. Upon even a cursory review of the Rhode Island District Court's decision in *Wheeler v. Shoemaker, supra*, this Court observes a drastic variation between the Rhode Island Medical Malpractice Statute and the Indiana Act applicable to the plaintiffs' claim. See, *Wheeler v. Shoemaker,* 78 F.R.D. at 219–23. The portions of the Rhode Island Act found objectionable by the Rhode Island District Court and relied upon by it to conclude that under the balancing test enunciated by the Supreme Court in *Byrd v. Blue Ridge Electric Co-op., supra*, included the following:

1. The malpractice panel contemplated by the Rhode Island Statute is clearly an adjunct of the State court, being appointed by the presiding justice of the local Rhode Island Superior Court, paid for out of State funds, conducting its procedures in accordance with the rules of evidence and civil procedure governing the Rhode Island Superior Courts and making its determination after conducting a full-scale evidentiary hearing; and

2. The Rhode Island procedure contemplates that, unless rejected, the review panel's findings constitute a judgment and that, even if the panel's findings are con-

tested and the claim goes to trial, panel members may not be called as witnesses to facilitate the challenge of the bases for their conclusion on liability.

In reaching its conclusion, the Rhode Island District Court relies heavily upon the Supreme Court's decision in *Byrd v. Blue Ridge Electric Co-op., supra.* The *Byrd* decision is only one of many decisions interpreting and expanding upon the landmark decision of *Erie v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As correctly related by the plaintiffs in their brief, in *Byrd* the Supreme Court of the United States adopted a balancing test as a methodology for the resolution of conflicts between State and Federal law in diversity litigation. The decision in *Byrd* was to the effect that since a State rule of procedure which provided that a determination of whether a claimant qualified as an employee for purposes of Workman's Compensation law was to be made by the judge rather than a jury was not "bound up" in State substantive law, since it was only based upon the decisions of a State court, and *Federal procedure* determining the rules of judge and jury should prevail. This conclusion was not based upon a constitutional determination regarding the Seventh Amendment but rather a "strong Federal policy" against permitting State rules to disrupt the relationship between a judge and jury in Federal courts.

It should also be noted that in *Wheeler v. Shoemaker, supra,* the court determined that the medical review panel procedure at issue was, in essence, an element of State substantive law and, under the dictates of *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), did not present a direct conflict between Federal and State rules of procedure. See, 78 F.R.D. pp. 223–24. The Rhode Island District Court may have erred in relying upon *Byrd* as the applicable pronouncement of the Supreme Court of the United States since courts and legal commentators have observed that the later decision of *Hanna v. Plumer, supra,* discarded or at least expanded upon the rationale enunciated by *Byrd.* See, *Wright, Law of Federal Courts* 859 2d Ed. § 59,

1970. Courts within the Seventh Circuit must also be aware that the interest of the Federal system in having "uniform procedures in its courts, should only be given "slight" weight. See, *Allstate Insurance Co. v. Charneski,* 286 F.2d 238, 244 (7th Cir. 1960).

Other portions of the *Wheeler v. Shoemaker, supra,* decision are also worthy of note. The Rhode Island District Court clearly distinguished a prior decision issued by a Tennessee District Court which had held that failure of a claimant to establish compliance with a mandatory review panel procedure justified the dismissal of the plaintiff's claim, as requested by the defendants in this action. See, *Flotemersch v. Bedford County General Hospital, et al.,* 69 F.R.D. 556 (D.Tenn.1975). In *Flotemersch,* the Tennessee District Court held that the mandatory medical review panel procedure constituted a statutory condition precedent to the initiation of litigation in the Federal District Court. To distinguish *Flotemersch,* the Rhode Island Court noted the obvious difference between the review panel procedures under the Tennessee Act before that court, similar to an administrative action, and those employed in the Rhode Island Statute before it which, as noted above constituted merely an adjunct of the State court. No such distinction exists between the Tennessee and Indiana Statutes.

The terms of the Act apply to claims filed in this Court and this statutory condition of precedent to the filing of malpractice claims within the diversity jurisdiction of this Court does not infringe upon this Court's jurisdiction.

### B. CONSIDERATIONS OF CONSTITUTIONAL CONSTRUCTION

 Among those generally recognized principles are the following:

1. Statutes subject to constitutional challenge must be presumed constitutional and a challenger must carry the burden of showing by clear, palpable and manifest evidence that the statute is unconstitutional;

2. That the challenger must have standing to attack the constitutionality of a statutory provision; and

3. That the constitutional challenge presented to the Court is ripe for its determination.

See, generally, 16 Am.Jur.2d, *Constitutional Law* § 101 (1964) at 109–14, 119–22, 137–43, and 172–76, and cases cited therein.

The plaintiffs have artfully preserved their rights to both follow and challenge the Act's procedures by having filed their complaint in this Court, the Elkhart Superior Court, and with the Indiana Insurance Commissioner.

Appellate Courts in at least eleven separate states have previously rejected similar constitutional challenges to malpractice legislation. See:

*Halpern v. Gozan,* 85 Misc.2d 753, 381 N.Y.S.2d 744 (1976);

*Comiskey v. Arlen,* 55 A.D.2d 304, 390 N.Y.S.2d 122 (1976);

*Carter v. Sparkman,* 335 So.2d 802 (Fla. 1976), cert. den. 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977);

*Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977);

*Paro v. Longwood Hospital,* 369 N.E.2d 985 (Mass.1977);

*Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977);

*State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434 (1978);

*State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 (1978);

*Atty. Gen. of Maryland v. Johnson et al.,* 282 Md. 274, 385 A.2d 57 (1978);

*Everett v. Goldman,* 359 So.2d 1256 (La. 1978);

*Parker v. Childrens Hospital,* 394 A.2d 932 (Pa.1978).

It should be noted that in the recent decision issued by the Louisiana Supreme Court on May 22, 1978 (*Everett v. Goldman, supra*), that court upheld malpractice legislation which appears to be a verbatim "copy" of the Indiana Act and rejected numerous constitutional arguments.

## C. RIGHT TO TRIAL BY JURY

■ The plaintiffs first challenge that the Act's provisions violate their right to trial by jury as guaranteed by the Seventh Amendment of the United States Constitution and Article I § 20 of the Indiana Constitution. The plaintiffs' position is that the Act violates this right as a result of the additional delay and expense which would allegedly result from the medical review panel procedure provided by the Act, the potential increased burden of proof imposed upon plaintiffs resulting from the admissibility of the medical review panel opinion and the infringement upon the plaintiffs' purported right to have the issue of damages determined by a jury.

The plaintiffs' attack upon the Act on this basis must rely, by obvious necessity, upon the premise that the United States and/or Indiana Constitutions prohibit any alteration of the common law procedure surrounding trial by jury. Unquestionably, the Act does not foreclose a medical malpractice claimant's right to have his claim against a qualified health care provider tried before a jury; rather, the Act requires that the claimant first participate in the medical review panel procedure described in the Act and permits the admissibility of the resulting determination as an expert opinion and further permits panel members to be called as witnesses at trial.

Long ago the Supreme Court of the United States expressly held that:

". . . (A) person has no property, no vested interest, in any rule of common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

*Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 777 (1876).

Similarly, the Indiana Supreme Court has held:

> "Except as forbidden or controlled by some provision of the state Constitution, or of the Constitution of the United States, or laws and treaties made under it, the Legislature has power to enact statutes which change the rules of common law, however, ancient." *Manley v. State,* 196 Ind. 529, 149 N.E. 51, 52 (1925).

▮ Both Federal and State Appellate Courts have expressly held that reasonable changes in the procedure surrounding the right to trial by jury are constitutionally permissible. In *Meeker v. Lehigh Valley Railway Co.,* 236 U.S. 412, 430, 35 S.Ct. 328, 335, 59 L.Ed. 644 (1915), the Supreme Court of the United States concluded that an Interstate Commerce Commission order making findings of the Commission "prima facie evidence of the facts therein stated" in subsequent civil proceedings did not violate the constitutionally protected right to trial by jury and concluded:

> "This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anyway work a denial of process of law."

Even more persuasive is the language of the Court in *In re Peterson,* 253 U.S. 300, 309–311, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920), where the Court held:

> *"The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' does not require that old forms of practice and procedure be retained . . . It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present*

*needs and to make of it an efficient instrument in the administration of justice."*

> *"Nor can the order be held unconstitutional as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as* prima facie *evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor or by the use to which his report can be put. An order of a court, like a statute, is not unconstitutional because it endows an official act or finding with a presumption of regularity or verity."*

These and similar decisions have been expressly relied upon by the numerous state courts upholding medical review panel procedures such as the one employed in the Act. See:

> *Halpern v. Gozan,* and *Comiskey v. Arlen,* (N.Y.);
>
> *Carter v. Sparkman,* (Fla.);
>
> *Prendergast v. Nelson,* (Neb.);
>
> *Paro v. Longwood Hospital,* (Mass.);
>
> *Eastin v. Broomfield,* (Ariz.);
>
> *State ex rel. Strykowski v. Wilkie,* (Wis.);
>
> *Atty. Gen. of Maryland v. Johnson,* (Md.); and
>
> *Everett v. Goldman,* (La.); all *supra.*

In each of these decisions, the courts rejected arguments identical to those posed by the plaintiffs here. The early New York decisions of *Halpern v. Gozan* and *Comiskey v. Arlen* established a pattern of analysis for the many similar conclusions that follows. Pertinent portions of those decisions provide:

> *"On this issue [right to trial by jury], the Legislature attempted an even-handed approach by permitting either side to call*

as a witness 'The doctor member or the attorney member of the panel or both of them' where the recommendation is admitted into evidence. In this manner, the 'attacking' party could attempt to neutralize the impact of the recommendation by demonstrating the panel member was neither as detailed, incisive, nor far-reaching as the jury trial itself. That as such the recommendation should be accorded little or no weight whatsoever. "This opportunity offered by the new law to examine and cross-examine into the genesis of the panel's finding would appear to give the jury an even further overview of the case, should the panelists be called as witnesses, than they would otherwise have had."

\* \* \* \* \* \*

"But one asks: Despite all the opportunities for examination and exploration of the recommendation, can it be said realistically that the jury will render a verdict inconsistent with the panel's findings? Or stated conversely: Would not the impact of the recommendation be so overpowering as to remove _de facto_ the essential elements of fairness and openmindedness which are so crucial to the total fabric of our jury system, thereby infecting with prejudicial taint? The response to both questions remains the same. For if the trial court instructs the jury with clarity and simplicity, their true roles as the exclusive finders of fact will prevail . . . With the proper instructions by the court, there could be no constitutional infirmity to contaminate the purity of the jurors' prerogatives. . . .

"Historically, jurors for the most part have proven their independence. They guard their roles with unique jealousy. . . .

They accept with obvious pride the admonitions of the trial court that they are 'sole judges of the facts'. Halpern v. Gozan, supra, 381 N.Y.S.2d at p. 748.

\* \* \* \* \* \*

"The whole thrust of the Trial Terms decision was its assumption that no jury could evaluate a medical malpractice pan-

el's recommendation with objectivity, or follow a trial court's instructions regarding the weight to be given it. That assumption was unwarranted and cannot serve as the basis for a declaration of unconstitutionality . . . ." Comiskey v. Arlen, supra, 390 N.Y.S.2d at p. 125.

The *Comiskey* decision also established what has proven to be an additional trend in concluding that, in fact, the panel's opinion constitutes nothing more than an expert opinion (as expressly stated in the Indiana Act) and the rule regarding the admissibility of that opinion amounts, at most, to another legislatively imposed exception to the hearsay rule. Compare *Prendergast v. Nelson, supra* (256 N.W.2d at p. 665 interpreting a Nebraska Constitution provision identical to Indiana's); and *State ex rel. Strykowski v. Wilkie, supra* (261 N.W.2d at p. 451). Nor does the Act's provision regarding the admissibility of the panel's decision on liability do any violence to existing Federal rules of evidence. Federal Evidence Rules 701 through 705 clearly contemplate such expert testimony.

As for the costs and delays allegedly inherent in the Act's medical review panel procedures, the plaintiffs have failed to provide any substance or quantification to their allegation and have particularly failed to detail how even presumed costs and delays affect the right to trial by jury.

The plaintiffs rely upon three decisions from other jurisdictions to support their constitutional attack based upon the alleged violation of right to trial by jury: *Wright v. Central Dupage Hospital Ass'n*, 63 Ill.2d 313, 347 N.E.2d 736 (1976); *Simon v. St. Elizabeth Medical Center*, Ohio Misc., 355 N.E.2d 903 (1976); and *Arneson v. Olson*, N.D., 270 N.W.2d 125 (1978). Said decisions have been severely criticized and rejected by courts and commentators. In *Prendergast v. Nelson, supra*, the Nebraska Supreme Court stated:

"Defendant builds much of his case on a recent Illinois decision (citation to *Wright* omitted) and an Ohio case (citation to

*Simon* omitted). The latter is a decision of a trial court, the Court of Common Pleas of Montgomery County, Ohio. Both cases found the medical review panel as a condition precedent to the filing of an action an impermissible restriction on the right of trial by jury guaranteed by their state Constitutions. We do not find either of those cases to be persuasive herein." *Prendergast v. Nelson, supra,* 256 N.W.2d at p. 665; see also, *Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implication,* 55 Tex.L.Rev. 759 (1977).

It should also be noted that the statute invalidated by the Illinois Supreme Court in the *Wright* decision permitted a panel's decision to be the final determination in medical malpractice controversies, in contrast to the Indiana Act.

The plaintiffs have additionally intermeshed an argument regarding the purported prejudicial nature of any determination made by health care providers sitting on an Indiana medical review panel. It should be initially noted that this contention has nothing to do with one's constitutional right to trial by jury.

More importantly, the basis of this attack (constitutional or otherwise) presumes a financial interest through a surcharge imposed by other portions of the Act. Health care providers subject to being placed on a medical review panel are not limited to those qualified under the Act and, therefore, subject to being called to serve. Additionally, the Wisconsin Supreme Court has expressly rejected an identical argument as being based upon too remote and speculative an "interest" to establish perverse prejudice and contrary to the obvious purpose of the panel procedure which is to provide for the rendering of an expert opinion on probable liability prior to the variances of litigation. See, *State ex rel. Strykowski v. Wilkie, supra.*

To support their contention that the constitutional right to trial by jury includes a right to have damages assessed by the jury, the plaintiffs cite two Indiana Supreme Court decisions. The first of those decisions, *Cleveland, Cinn., Chic., and St. L. R.R. Co. v. Hadley,* 170 Ind. 204, 216, 82 N.E. 1025, 1030 (1907), holds merely that the determination of compensation for personal injuries suffered by a plaintiff is within the province of the trial jury. This case does not hold or even imply that the right to have damages assessed by a jury has a constitutional dimension. In the second, *City of Terre Haute v. Deckard,* 243 Ind. 289, 183 N.E.2d 815 (1962), the court merely held that the grant of an appellant's attempt to present a factual issue for the first time after trial and the close of the evidence violated the constitutional right to trial by jury. No special significance was assigned to the fact that the evidence which the defendant wished to present was in mitigation of damages. The basic premise of the plaintiffs' argument regarding the constitutional dimension of damage determination must fail, at least by analogy, in light of the recognized concepts of *additur* and *remittitur* recognized both at common law and under present practice. In a decision issued by the Indiana Court of Appeals, that Court rejected constitutional challenge to the trial court's power to provide for additur under the thirteenth juror rule incorporated in Trial Rule 59(E)(7) of the Indiana Rules of Trial Procedure. See, *Borowski v. Rupert,* 152 Ind.App. 9, 281 N.E.2d 502 (1972). There, the court carefully analyzed and reviewed the common law concept of right to trial by jury and held that an Indiana trial court's right to amend a damage award returned by a jury is consistent with the common law. Nowhere in that analysis did the court relate that the Indiana Constitution requires that a jury be vested with the sole power to assess damages without reasonable limitation based upon public policy. Furthermore, the plaintiffs' reliance upon the above referenced Illinois and Ohio decisions in relation to this argument regarding the constitutional right of a jury to assess damages without limitation is misplaced. In none of the decisions of those courts did the court rely upon any constitutional provision concerning a trial by jury to strike down a damage limitation. One of the most recent

statements in this area is from the Supreme Court of North Dakota on August 11, 1978 in *Arneson v. Olson,* 270 N.W.2d 125 (N.D. 1978). In the North Dakota statute there was a *total abolition* of trial by jury and such was at the heart of that court's finding of unconstitutionality.

The plaintiffs have failed to cite any constitutional provision or interpretive authority which even purports to support their position that the United States or Indiana Constitutions protect or mandate a right that a jury determine a claimant's compensation.

## D. EQUAL PROTECTION

▮ Plaintiffs next attack the Act based upon its alleged violation of the equal protection provisions of the Fourteenth Amendment to the United States Constitution and the parallel provision of the Indiana Constitution: Article I § 23. They argue that the Act's requirement of submission of potential medical malpractice claims to a medical review panel and the Act's limitation of damages "blatantly" violate these provisions. The Act does establish a separate classification for health care providers who qualify for protection under its provisions. Not all forms of legislative classification, however, amount to constitutionally defective discrimination since nearly every legislative enactment discriminates in some manner. See, *Redish,* 55 Tex.L. Rev. 759, 769 (1977). The plaintiffs failed to articulate even the standard of equal protection analysis upon which they rely to support their argument. Clearly, without the existence of a fundamental right or suspect classification involving invidious discrimination the traditional, low-scrutiny test applies. That standard has been articulated as follows:

> "The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their law results in some inequality. A

statutory discrimination will not be set aside if any statement of facts may be reasonably conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

Also worthy of note is the following statement of the court regarding the test to be applied to economically motivated social legislation:

> In the area of economic and social legislation, a statutory plan does not violate the equal protection clause merely because the classifications contained therein are imperfect. (Citations omitted). Nor does the equal protection clause require a state to "choose between attacking every aspect of a problem or not attacking a problem at all." See, *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

This standard has been adopted by the majority of the courts faced with the issue and its use has been approved by legal commentators. See, *Sparkman v. Carter; Eastin v. Broomfield; Atty. Gen. v. Jones;* and *Everett v. Goldman, all supra;* and *Redish, supra;* and *NOTE,* the *Constitutional Considerations of Medical Malpractice Screening Panels,* 27 Am.U.S.Rev. 161 (1977). Pertinent portions of those decisions merit recitation here:

> *"(T)he issue in cases where no fundamental rights or suspect classification is present is whether the discriminatory treatment is supported by rational basis reasonably related to the governmental interest sought to be advanced by it. (Citation omitted).*
>
> *"Certainly, in the present case we are faced with a situation where parties similarly situated (victims of malpractice) are treated differently . . .*
>
> *"But the statute does not affect the fundamental rights or create a suspect classification . . . The right to immediate commencement of a malpractice lawsuit without panel determination, and the right to state the total of sought damages in a petition is not fundamental rights jealously protected by the highest standard of the equal protection clause.*

*Moreover, patients of qualified health care providers do not compromise a suspect classification. Thus, because the 'compelling state interest' test is not appropriate in this case, a lesser standard must be utilized. . . .*

*"The valid state purpose said to be served by the two provisions of the medical malpractice act before us is the lowering of the cost of health care . . . of the citizen of the state. We cannot say that the two challenged provisions of the act adopted by the legislature represent an unreasonable response to the medical malpractice problem. Nor are the provisions especially far reaching." Everett v. Goldwin, supra, 359 So.2d 1266.*

\* \* \* \* \* \*

*"We think it clear that this statute, requiring the submission of malpractice claims to arbitration prior to court suit and thus treating medical malpractice tort claimants differently from other tort claimants, works no violation of the equal protection of the laws.*

*"Initially, we may quickly dispose of the · Bar Association's assertion that, since the statute affects the exercise of the right to [drop] trial by jury in a civil action, Md.Const., Article XV, § 6, its differential treatment of malpractice claimants should be subjected to the strict scrutiny which is employed when a classification limits a fundamental right or operates to the disadvantage of a suspect class and hence must be justified by a compelling state interest. The appellee's assertion is premised on the mistaken assumption that the Act interferes with the right to a jury trial." Atty. Gen. v. Johnson, supra, 385 A.2d at p. 77.*

The plaintiffs' argument regarding equal protection provides no authority that would support this Court's application of any other standard of equal protection analysis than that applied by the decisions reviewed above. It is clearly inferrible that the two highest courts of Indiana would similarly apply a rational basis test to the determination of whether the Act violates the constitutional rights of equal protection. See,

*Sidle v. Majors,* 264 Ind. 206, 341 N.E.2d 763 (1976); and *Chaffin v. Nicosia,* 261 Ind. 698, 310 N.E.2d 867 (1974).

To support their position, the plaintiffs again only refer to the Illinois and Ohio decisions cited above. The Ohio decisions cited, once again, are only trial court decisions and additionally, their application of a strict scrutiny standard of equal protection review runs contrary to the Indiana and Federal precedents cited above. Furthermore, the Illinois Supreme Court decision in *Wright* is equally infirm since its equal protection "analysis" turns upon the purported requirement that some "quid pro quo" necessarily replace any change of common law doctrine; a theory rebutted by the contrary decisions rendered in the numerous other jurisdictions reviewed above.

The closest question here presented is the constitutional challenge to the dollar limitation on the amount of possible recovery. This challenge is rationalized under the Seventh Amendment as well as under the due process clause and equal protection clause of the Fourteenth Amendment. It is not necessary to confront that issue *here* and *now*. That issue is not yet ripe for ruling in this record.

Since there has been a failure to meet a valid condition precedent based on the Indiana Malpractice Act, this case must be dismissed without prejudice. It must therefore be emphasized that this Court does not here purport to decide the limitation issue.

### E. ACCESS TO COURTS AND DUE PROCESS

Next, plaintiffs assert that the Act violates Article I, § 12 of the Indiana Constitution which, in essence, guarantees litigants the right of access to the courts of this State to remedy an injury to person or property. To support this allegation, the plaintiffs merely cite the constitutional provision and conclude, without further analysis, that the alleged costs and delays resulting from the medical review panel procedure established by the Act and the Act's limitation upon damages recoverable against health care providers for medical malpractice "clearly" violate that provi-

sion's proscriptions. Obviously, some expense and time will necessarily result from compliance with the medical review panel procedure. The extent and effect of this added expense and delay are clearly questions of fact and the plaintiffs have failed to provide this Court with any evidence on either issue. Furthermore, plaintiffs' argument ignores the fact that the purpose of this medical review panel procedure is, in part, to expedite the handling of such claims by providing expert opinions regarding liability prior to the initiation of the delays inherent in modern day litigation. The plaintiffs' position at this juncture of the proceedings must be that any restriction placed upon the plaintiffs' "access" to this or any other court, such as filing fees, court costs and any applicable statutes of limitations, is per se unconstitutional.

The courts of other jurisdictions properly faced with such a challenge to malpractice legislation have noted that the concept of constitutional due process must be addressed in their response. For example, the Wisconsin Supreme Court enunciated following in response to an "access" challenge:

> "Petitioners assert that there is a fundamental right of free access to the courts. They identify five aspects of the panel review process which they say impaired this right, denying them the due process of law guaranteed by the fourteenth amendment of the United States Constitution and Article I, § 1 of the Wisconsin Constitution."

> \* \* \* \* \* \*

> "Whatever the precise status of the right of access to the courts, it is clear that due process is satisfied if the statutory procedures provide an opportunity to be heard in court at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process is flexible and requires only such procedural protections as the particular situation demands. Id.

> "Petitioners find an impermissible burden in the financial expense of trying a case to a panel prior to a jury trial. It has been held, however, that a party is not deprived of due process merely because it

> must seek administrative resolution of its claims before it has access to the courts." State ex rel. Strykowski v. Wilkie, supra, 261 N.W.2d at p. 444.

The Maryland Court of Appeals more recently provided the following summary:

> "The few appellate courts which have considered the question in terms of expense have concluded that reasonable restrictions on the right of access may be prescribed by law, and that the exercise of the police power for the benefit of the public health by an effort to reduce the cost of malpractice insurance, and ultimately medical expense, is constitutional." Atty. Gen. v. Johnson, supra, 385 A.2d at p. 71.

> \* \* \* \* \* \*

> "The appellees object as well to the delay entailed by requiring arbitration prior to trial, and in fact the trial court found that the time necessary to achieve a final judicial resolution to a claim if the arbitration panel's decision is rejected would be significantly lengthened. Delay, however, usually accompanies any two-step proceeding, and the same principles we have already set out to support the conclusion that such delay does not unconstitutionally obstruct the court proceeding and the attendant right to trial by jury (citation omitted)." Atty. Gen. v. Johnson, supra, 385 A.2d at p. 75.

One of the decisions cited by the Maryland Court to support this proposition was the Nebraska Supreme Court's decision in Prendergast v. Nelson, supra, wherein the Court held:

> "It is the primary duty of the courts to safeguard this [constitutional] declaration of rights and remedies. However, it does not in any way imply that the Legislature is without power to impose a special procedure before resort to the courts. Claimants are not denied access to the courts. Those who do not elect otherwise are merely required to follow a certain procedure before submitting their claims to the courts."

> \* \* \* \* \* \*

> ". . . The Constitution does not forbid the creation of new rights, nor the

abolition of old ones recognized by the common law, to obtain a permissible legislative object. *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929).

\* \* \* \* \* \*

"The act in question does not affect the jurisdiction of any Nebraska court. It relates to the remedies available and provides for the ultimate determination of the controversy by the courts."

\* \* \* \* \* \*

"The act provides, at the expense of a slight delay in filing the suit in court, a procedure for review to determine from the evidence submitted if there is a basis for the claim. If the panel determines there is a basis for the claim, the claimant obviously is benefited. If it determines that there is no basis for it, the claimant is informed of what others think of the merit of its claim. If he disagrees, he still has access to the courts for his indication of what he thinks his rights may be."

\* \* \* \* \* \*

". . . The Nebraska act should promote an early disposition of many cases by a voluntary settlement. It brings the parties together after the facts are available to both sides and both sides have heard the opinion that was voiced by the review panel. This, in effect, is in the nature of a pre-trial settlement conference. It in no way encroaches on the powers or prerogatives of the court." *Prendergast v. Nelson, supra,* 256 N.W.2d at pp. 663–64 and 667.

Most recently, the Louisiana Supreme Court, in upholding a provision identical to the Indiana Act, similarly rejected a constitutional challenge based upon violation of a state constitutional provision regarding "access" to the courts and due process of law. The court held:

"when a claimant is asserting a right not subject to special constitutional protection, however, access to the courts may be restricted if there is a rational basis for that restriction." *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).

\* \* \* \* \* \*

"The act provides at the expense of a delay in filing this suit in court, a procedure for review of the claim. The panel determines from the evidence submitted whether there is a basis for a claim, and gives its opinion accordingly."

\* \* \* \* \* \*

"In all cases which go to trial, the judge or jury remain the final arbiter of factual questions concerning the liability and quantum." See, *Everett v. Goldman, supra,* 359 So.2d at pp. 1268–69.

The recent Indiana Supreme Court decision of *Geyer v. City of Logansport,* Ind., 370 N.E.2d 333 (1978), rejected a constitutional challenge to the Indiana statute requiring notice to municipal corporations and governmental bodies in this State prior to the initiation of tort litigation against them.

The provisions of the Act assailed by the plaintiffs do not violate Article I, § 12, of the Indiana Constitution nor do they violate the due process clause of the Fourteenth Amendment to the Constitution of the United States. One legal commentator has expressly concluded that since a claimant's right to pursue litigation does not constitute a fundamental right, as clearly established by the case law cited above, no real due process issue arises in consideration of such medical malpractice statutes concerning the purported burdens placed upon claims by medical review panel procedures. See, *NOTE,* 17 Am.U.L.R. at p. 169, *supra.*

Therefore, this constitutional challenge must similarly fail.

This Court will here decline to decide the challenge to this statute based solely on provisions of the Indiana Constitution. Given the result here announced it is not necessary to give advisory opinions thereon.

The plaintiffs' argument regarding the applicability of the Act to claims pending in this Court must fail. Clearly, the Act contemplates its application to claims filed under the diversity jurisdiction of Federal District Courts. The question then becomes whether the Act infringes upon Federal jurisdiction. Here, even under the balanc-

ing test argued by the plaintiffs, the Indiana legislation here at issue, clearly distinguishable from the Rhode Island legislation before the court in *Wheeler v. Shoemaker, supra,* does not affect federal jurisdiction or procedure. This conclusion is inescapable even upon application of the rationale applied in *Wheeler v. Shoemaker.* The state interest precipitating the passage of the Act, the substantive nature of the statutory provisions at issue, and the lack of any conflicting federal procedure or substantive law requires that the Act be applied by this Court.

Plaintiffs' attack upon the constitutionality of the Indiana Medical Malpractice Act must also fail. To support their attack, the plaintiffs can cite only three cases. One of these is a trial court decision from the State of Ohio and the other from the State of Illinois which has been criticized by other courts and legal writers on the subject. The North Dakota case is fundamentally different from the one in Indiana. The following jurisdictions which have same or similar malpractice acts have upheld their constitutionality and have rejected similar challenges to that being attempted by the plaintiffs in this case. These jurisdictions are:

> New York (1976–77)
> Florida (1976)
> Nebraska (1977)
> Arizona (1977)
> Idaho (1976)
> Louisiana (1978)
> Maryland (1978)
> Wisconsin (1978)
> Pennsylvania (1978)

The constitutionality of the Indiana Medical Malpractice Act should be and is upheld by this Court. Plaintiffs' complaint must be dismissed for failure to comply with the Indiana Medical Malpractice Act. Case dismissed without prejudice. Each party to bear its own costs.

This Judge commenced this journey with an instinctive sympathy for the plaintiffs'

challenge to the Indiana Medical Malpractice Act. A careful analysis must reveal that such initial reaction was not in accord with sound legal teaching. Judges must beware lest they permit their own social and political views to interfere with the proper functioning of the judicial process. Such counseling for judicial restraint is both old and honorable. As only one example see the great dissent written by the first Harlan in *Pollock v. Farmers Loan & Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895). It has a special application to a review of a state legislative decision in an area of social, economic and political policy that is peculiarly within its discretion. It applies even more pointedly where a United States District Judge is reviewing such state legislative action. The question is not whether the United States District Judge thinks the state legislature acted wisely. It is a question of whether it acted within the Constitution.[1] Here it did.

---

1. This point is well made by Justice Hughes in *Chicago, Burlington & Quincy Railroad Co. v. McGuire,* 219 U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328 (1911), and by Mr. Justice Black in *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1962). See also, the dissent of Mr. Justice Brandeis in *New York Central Railroad Co. v. Winfield,* 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1917).