GUNTARS KLETNIEKS, an Infant, by His Parents and Natural Guardians, AUSTRIS KLETNIEKS and Another, et al., Respondents, v BROOKHAVEN MEMORIAL ASSOCIATION, INC., Doing Business as BROOKHAVEN MEMORIAL HOSPITAL, Defendant; MILTON ROSENBERG et al., Respondents, and DAVID SPIELSINGER, Appellant.

Second Department, June 28, 1976

*Anthony L. Schiavetti* and *Weinstein, Chayt & Bard, P. C.* *(Norman Bard* of counsel; *Walter Begos* and *Murray Weinstein* on the brief), for appellant.

*Charles Kramer* of counsel *(Kramer, Dillof & Tessel,* attorneys; *Daniel Kramer* on the brief), for Guntars Kletnieks, respondent.

*Rivkin, Leff & Sherman (John F. Morrison* of counsel), for Milton Rosenberg and others, respondents.

MARTUSCELLO, J. The appellant, Dr. David Spielsinger, appeals, by permission, from an order which denied his motion, *inter alia,* to vacate a finding of liability as to him made by a medical malpractice panel convened pursuant to section 148-a of the Judiciary Law.

## THE ISSUES

The issues on this appeal are whether: (1) an order denying a motion to vacate a medical malpractice panel's finding is appealable to this court as of right pursuant to CPLR 5701;

(2) the doctor-member of a medical malpractice panel must be a specialist practicing in the same field of medicine as does the defendant-doctor against whom malpractice is claimed;

(3) the medical malpractice panel's finding in this case (i.e., that appellant's care and treatment of the infant plaintiff constituted "a departure from accepted practices and procedures") is legally insufficient as a finding of "liability" pursuant to section 148-a of the Judiciary Law in the absence of a concomitant finding that such "departure" was a proximate cause of the claimed injuries;

(4) the medical malpractice panel's finding of liability in this case should be vacated because the medical panelist failed to disclose that he and one of the codefendant doctors both (a) attended the University of Geneva (Switzerland), class of 1956, and (b) are members of the same county-wide medical society; and, lastly,

(5) this court's amendment of its rules (22 NYCRR 684.3 [h] and 684.4 [b], both effective as of April 7, 1976) regulating procedures before medical malpractice panels are (a) retroactive in application and therefore applicable here and (b) if retroactively applicable, whether such factor mandates the vacatur of this panel's finding of liability as to appellant.

We affirm the denial of the vacatur of the medical malpractice panel's finding. However, due to the novelty of the issues presented, the recent origin of the statute under consideration and the considerable general public interest involved, we shall present general guidelines for future proceedings before medical malpractice panels and appeals to this court.

## The Facts

In March, 1971, the instant medical malpractice action was commenced against the appellant, Dr. Spielsinger (a pediatrician), three other doctors (all obstetricians) and the Brookhaven Memorial Hospital, seeking damages in excess of $5,000,-000 for defendants' alleged negligence in causing the infant plaintiff to have "suffered severe and irreparable damage to his brain and central nervous system, which has crippled him for the rest of his natural life." In accordance with section 148-a of the Judiciary Law, the Clerk of the Supreme Court, Suffolk County, by letter dated April 24, 1975, directed respective counsel to submit to him, *inter alia,* pleadings, bills of particulars and medical and hospital reports, which material would then be submitted to the Suffolk County Medical Society for review and a determination of the medical specialty involved. By letter dated October 23, 1975, the Clerk of the Supreme Court, Suffolk County, advised the parties of the identities of the attorney and doctor members of the medical malpractice panel and directed that any objections be made to the court within five days. No objections were made. On November 10, 1975, a hearing was held before the medical malpractice panel, which had as its medical member, Dr. Shuter, an obstetrician and gynecologist; the Suffolk County Medical Society had determined the specialty involved to be

gynecology. The panel unanimously found liability as to appellant, stating: "With respect to the pediatrician the panel finds unanimously that there was a departure from accepted practices and procedures on his part, in the care and treatment rendered to the infant after he was called in, and after his examination of the infant, and the infant's discharge from the hospital."

The panel made no finding as to the defendant obstetricians, observing that a sharp issue of fact existed, but, significantly, stated: "However, the panel is of the opinion that in the event that it is established that the rupture of the amniotic sac occurred on either the eighth or ninth days of April, that the delay between such rupture and the events of April 11th represents a departure from accepted practices and procedure."

By letter dated December 31, 1975, appellant's counsel informally requested the panel Judge to vacate the finding of liability, alleging, essentially, that (1) Dr. Shuter, the medical member of the panel, was an obstetrician and therefore an inappropriate party to sit in review of the actions of appellant, a pediatrician, and (2) Dr. Shuter had failed to disclose his relationship with one of the defendant obstetricians, Dr. Molinoff, i.e., that they had both attended the University of Geneva, in Switzerland and had both graduated in 1956. When the informal request was denied appellant moved formally before the same Judge for the same relief, adding to his papers (1) the fact that both Dr. Shuter and defendant Dr. Molinoff are members of the Suffolk County Obstetrical and Gynecological Society, and (2) the allegation that the panel finding of a departure from accepted practices and procedures was not a finding of liability as required by law. As noted, the motion to vacate the medical malpractice panel's determination was denied.

## BACKGROUND—MEDICAL MALPRACTICE PANELS

Section 148-a of the Judiciary Law, which created the medical malpractice panel (and its short-lived precursor, the medical malpractice "part"), was born of the urgent necessity to find a pragmatic and equitable procedure for dealing with the crisis situation of increasing medical malpractice insurance rates. In approving chapter 146 of the Laws of 1974, which enacted section 148-a of the Judiciary Law, then Governor Wilson, in his approval memorandum, stated: "Medical

malpractice suits have become a problem of ever-increasing proportions in New York State. One innovative and promising concept brought to bear on this problem was the establishment three years ago of a medical malpractice mediation panel in the First Judicial Department. The 'Stevens Panel' has proven to be an excellent vehicle for bringing the parties together for informal discussion prior to actual litigation and utilization of this concept has enabled settlement of many cases and more expeditious trial of those that could not be settled. Therefore, I fully support implementation of this concept on a Statewide basis" (NY Legis Ann, 1974, p 379).

Further, this court takes notice that the medical malpractice problem is not yet over and that legislative and executive action is continuing in an effort to bring about a viable resolution. This was made clear by Governor Carey in his April 9, 1976, Special Message to the Legislature on medical malpractice insurance (McKinney's 1976, Sess Laws of NY, pp A-246—A-250). Thus, section 148-a of the Judiciary Law represents a legislative innovative concept geared toward informal resolution of malpractice actions and expeditious judicial resolution of those cases not initially resolved. Against this background we shall proceed to evaluate appellant's contentions on this appeal after first briefly considering the basic operational aspects of section 148-a.

### SECTION 148-A OF THE JUDICIARY LAW—BASIC OPERATION

Section 148-a of the Judiciary Law provides, in essence, for the following procedures:

All hearings are held before a panel of three, consisting of a Justice of the Supreme Court, a physician and an attorney (subd 2). The panel doctor and attorney are chosen from a list prepared by the Presiding Justice of each Appellate Division (subd 2, pars [a], [b]). Prior to the hearing date any party may file a written objection to the designation of a doctor or attorney, which objection shall be decided by the Justice presiding as a member of the panel (subd 2, par [d]). The specialty involved is determined and communicated to the court by "the Medical Society of the State of New York, a county medical society and/or the New York Academy of Medicine", after a review of material submitted to the court (pleadings, bills of particulars and medical and hospital rec-

ords) (subd 3, pars [a], [b]). The hearing itself is informal without a stenographic record (subd 4). The panel "may request an additional doctor having particular expertise in the specialty involved to assist it in the determination" (subd 6). If the three members of the panel concur as to the question of liability, a formal written recommendation concerning such liability is signed by the panel members and forwarded to all parties. The unanimous recommendation of the panel is admissible in any subsequent trial, but is not binding upon the trier of the facts. If the recommendation is read in evidence at the trial, the doctor or attorney member of the panel, or both, may be called as a witness by any party with reference to the panel recommendation only (subd 8).

We note that subdivision 8 of section 148-a, dealing with the admissibility of a unanimous panel finding at the trial of the action, has been held constitutional at nisi prius *(Halpern v Gozan,* 85 Misc 2d 752), but, as appellant specifically avoids a challenge of that aspect of the statute, we, accordingly, leave for another day a determination of that constitutional question.

## THE INSTANT APPEAL

As to the threshold issue of appealability, we hold that, in light of the spirit of section 148-a of the Judiciary Law and the nonfinal nature of a unanimous panel finding, determinations of medical malpractice panels are not appealable as of right to this court pursuant to CPLR 5701; nor can they be made so by the expediency of the making of a formal motion for relief informally denied by the panel Judge and then appealing from the order denying such relief. The reasons for such a rule are manifest. The legislative intent underlying section 148-a is for an expeditious and informal resolution of the litigation. Such an intent would be thwarted were we to construe section 148-a as permitting appeals from what does not even amount to an interim determination. Furthermore, section 148-a permits counsel to explore the claimed underlying infirmities of the nonbinding panel determination at the trial of the action (see Judiciary Law, § 148-a, subd 8). Therefore, appeals from orders denying relief with respect to findings of medical malpractice panels will be permitted only by leave of this court upon a demonstration of good cause shown.

## APPELLANT'S CONTENTIONS

First, appellant contends that vacatur of the medical mal-

practice panel's finding should have been granted because Dr. Shuter, the medical panelist, is an obstetrician, and appellant is a pediatrician, thus depriving him of "peer review"* in violation of his constitutional right of equal protection.

The concept of "peer review", as appellant employs the term, is not mandated by section 148-a of the Judiciary Law or by constitutional doctrines of equal protection. The statutory scheme treats the classification of doctor in a uniform manner by providing that a doctor against whom claims of malpractice are lodged shall appear before a three-member panel having, as its medical panelist, a doctor qualified in the "specialty involved". The obvious reason for having a medical specialist on the panel is to give the panel's nonmedical members the benefit of the medical member's expertise. Undoubtedly, on a trial of a medical malpractice action, the sufficiency of the qualifications of an expert is left to the sound discretion of the court (see *Meiselman v Crown Heights Hosp.,* 285 NY 389; see, also, Richardson, Evidence [Prince, 10th ed], § 368). Additionally, on a trial of such an action, a medical witness need not be a specialist in order to qualify as an expert (see *Fuller v Preis,* 35 NY2d 425; Fisch, New York Evidence, § 425, p 246; see, also, Competency of General Practitioner to Testify as Expert Witness in Action Against Specialist for Medical Malpractice, Ann 31 ALR3d 1163; 31 Am Jur 2d, Expert and Opinion Evidence, § 105-106). There appears no beneficial reason in logic or law to require a different and higher test for qualification as a medical malpractice panelist than is required for qualification as a medical witness on a trial of the action. Thus, the statutory scheme is grounded upon a reasonable basis and cannot be set aside merely because it is not perfect, or upon the ground that a better scheme may theoretically be conceived (see *Matter of Malpica-Orsini,* 36 NY2d 568). In *Malpica (supra,* p 571), the Court of Appeals, in an observation particularly appropriate here, stated: "A State does not violate the guarantee [equal protection] merely because the classifications made by its laws are imperfect *(Dandridge v Williams,* 397 US 471, 485), and a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it *(McGowan v*

---

* Peer review is defined by appellant to be a "determination by a [medical] malpractice panel where the medical panelist is of the *same specialty* as that of the defendant against whom malpractice is claimed" (emphasis supplied).

*Maryland,* 366 US 420, 426; *Matter of Dorn 'HH' v Lawrence 'II',* 31 NY2d 154, 158)."

Second, appellant contends that the medical malpractice panel's finding as to him should have been vacated because: (1) its finding of a "departure" without a concomitant finding that such "departure" was the "proximate cause" of the plaintiff's injuries is legally insufficient as a finding of "liability" as contemplated by section 148-a of the Judiciary Law. This contention lacks merit. Section 148-a (subd 4) of the Judiciary Law provides, *inter alia,* that the "hearing shall be informal and without a stenographic record". Subdivision 8 provides, *inter alia,* that "if the three members of the panel concur as to the question of liability, a formal written recommendation concerning such question of liability shall be signed by the panel members and forwarded to all parties." Thus, it clearly appears from the plain meaning of the words of the statute that all that is required from the panel is an "informal" hearing and a signed unanimous recommendation as to "liability". The statute's plain words and its legislative history mitigate against a technical and formalistic interpretation mandating that the panel explain and justify its finding of liability. It may reasonably be assumed that the panel's composition (with a Judge and attorney member) insures that a finding of "liability" necessarily includes a finding of "proximate cause". Clearly, on a trial of a medical malpractice action, as in any negligence action, a verdict finding liability can be sustained only if the proof adequately demonstrates that the negligence claimed (i.e. the "departure") is the "proximate cause" of the injuries sustained (see *Foley v Gillick,* 39 AD2d 546; *Woods v Pisillo,* 35 AD2d 597; *Peloro v Abbondante,* 35 AD2d 561; cf *Sherman v Concourse Realty Corp.,* 47 AD2d 134). Such criteria, however, are not to be applied to a medical malpractice panel's finding, which need only make a recommendation with respect to "liability".

Third, appellant contends that the medical malpractice panel's finding of liability should be vacated because Dr. Shuter, the medical panelist, failed to disclose his relationship to Dr. Molinoff, one of the codefendant obstetricians.

We determine that the "relationship" of the medical panelist to defendant Dr. Molinoff is totally insufficient to warrant vacatur of the panel's finding. All that appellant alleges is that both doctors attended the University of Geneva and were members of the class of 1956 and that they both are members

of the Suffolk County Obstetrical and Gynecological Society, where they attend meetings and "discuss mutual concerns and common problems."

Such facts, standing alone, do not present a reasonable basis upon which an inference of impropriety may be predicated. Of necessity, members of the same medical specialty may oft times be members of the same county-wide and State-wide organizations. Courts have already noted the "difficulty inherent in securing 'independent' [medical] expert witnesses" *(McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20, 27, 28). If common membership in professional organizations be deemed sufficient to merit panel disqualification, the task of obtaining independent medical evaluation will be rendered more difficult and would not serve the clearly expressed legislative intent.

Finally, appellant contends that this court's amendment of its rules regulating procedure before medical malpractice panels should be retroactively applied, and, if so applied, would mandate vacatur of the panel's finding. We disagree. By amendment effective April 7, 1976 [this appeal was perfected on April 2, 1976] this court amended (1) its section 684.3 (subd [h] [22 NYCRR 684.3 (h)]) to provide, in essence, that the medical and attorney members of any proposed panel "disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him" and (2) its section 684.4 (subd [b] [22 NYCRR 684.4 (b)]) to provide, in effect, that if a malpractice action involves two or more defendants, each of whom is a specialist in a different area of medicine, "the justice assigned * * * *in his discretion* * * * [may] direct that a separate panel make a disposition with respect to each defendant" (emphasis supplied).

We deem these rules to be prospective in application in accordance with traditional rules of construction (see McKinney's Cons Laws of NY, Statutes, § 51, subd b). Here no new "remedies" were created; rather, procedural rules were established to make explicit the inherent power of the panel Judge. The authorities cited by the applicant *(Kugel v Telsey,* 250 App Div 638; *Insetta v Insetta,* 20 AD2d 544) are distinguishable. In those cases the Legislature, pending appeal, amended the law to provide for new remedies which changed the parties' substantive rights. Additionally, were we to apply the above-cited rules retroactively, the result here would be the

same, as we perceive no abuse of the court's discretion on the basis of the facts of this case.

HOPKINS, Acting P. J., MARGETT, RABIN and HAWKINS, JJ., concur.

Permission for the taking of the appeal is hereby granted.

Order affirmed, without costs or disbursements.