**William GRONNE and Rita Gronne, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,**

**v.**

**Robert ABRAMS, Attorney General of the State of New York, Individually and in his official capacity and Joseph W. Bellacosa, Chief Administrative Judge of the State of New York, Individually and in his official capacity, Defendants-Appellees.**

No. 1053, Docket 86–7069.

United States Court of Appeals, Second Circuit.

Argued April 7, 1986.

Decided June 16, 1986.

Henry M. Grubel, Freeport, N.Y., for plaintiffs-appellants.

Paul M. Glickman and Marla Tepper, New York City (Asst. Attys. Gen., of counsel, Robert Abrams, Atty. Gen. of State of N.Y.), for defendant-appellee Robert Abrams.

Patricia Satterfield, New York City (Office of Court Admin.), for defendant-appellee Joseph W. Bellacosa.

Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.

MINER, Circuit Judge:

William Gronne and Rita Gronne appeal from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Chief Judge*) dismissing their complaint against the Attorney General and the Chief Administrative Judge of the State of New York. Judge Weinstein held that section 148–a of the New York Judiciary Law, which provides procedures for the submission of medical malpractice claims to pretrial panels, did not violate the due process or equal protection clauses of the fourteenth amendment.

Finding no error in Judge Weinstein's decision, we affirm.

## I. BACKGROUND

William Gronne, who is now eighty-one years of age, commenced a medical malpractice action against several physicians and the Victory Memorial Hospital on May 12, 1980 in the New York Supreme Court, Kings County, alleging that the "defendants' negligent performance of unnecessary surgery and negligent administration of improper drugs into his spinal cord" caused him "many terrible injuries," including the amputation of a leg and chronic fecal impaction. Rita Gronne, William's wife, sought recovery in the same action for loss of consortium.

The Gronnes' medical malpractice action has been on the trial calendar of the Supreme Court in Kings County since October 26, 1983. Their case has not yet gone to trial, however, because medical malpractice actions instituted in New York State Supreme Court must be referred to a malpractice panel for a hearing on liability before proceeding to trial. N.Y.Jud.Law § 148–a(1) (McKinney 1983). The Gronnes claim that the reason for the delay in their case is that the state court has been unable to locate and assign an appropriate physician to sit on the panel.

According to section 148–a, medical malpractice panels consist of ·a justice of the supreme court or a retired justice of the supreme court, a physician, and an attorney-at-law. *Id.* § 148–a(2). The physician is chosen from a list which the presiding justice of each of the appellate division departments prepares "with the assistance of the Medical Society of the State of New York, a county medical society and/or the New York Academy of Science." The list of physicians is subdivided according to the particular specialty of each. *Id.* § 148–a(2)(a). Prior to the liability hearing, any party may file a written objection to the selection of the panel doctor or attorney; the panel justice then rules on the objection. *Id.* § 148–a(2)(d).

If the panel reaches a unanimous decision on the question of liability, a formal written recommendation concerning liability is issued and is admissible in evidence at a subsequent trial. *Id.* § 148–a(8). The statute provides that "[t]he recommendation shall not be binding upon the [trier of facts] ... but shall be accorded such weight as the [trier of facts] chooses to ascribe to it." *Id.* If the recommendation is read to the jury, the doctor member or attorney member of the panel may be called as a witness by any party. *Id.* Following consideration by the panel, whether or not a recommendation as to liability is made, the case is remanded to the trial calendar. Of course, the panel may assist in the settlement of the case before that time. *Id.* § 148–a(7).

The Gronnes commenced the present action pursuant to 42 U.S.C. § 1983, contending that section 148–a and the regulations promulgated thereunder by the various appellate divisions violate the due process and equal protection clauses of the fourteenth amendment. Their primary due process claim is that they have been denied their right to a jury trial because they cannot get a medical malpractice panel to hold a liability hearing, which is a prerequisite to trial, and, in any event, that the determination of any such panel would unduly interfere with the role of the jury. In attacking the statute as violative of the equal protection clause, they assert that the legislation discriminates generally against all medical malpractice plaintiffs and discriminates in particular against a sub-class of medical malpractice plaintiffs. The latter claim of discrimination relates to a 1985 amendment to section 148–a exempting litigants in Suffolk County and the Fifth Judicial District from participation in medical malpractice panels. According to the Gronnes, plaintiffs whose actions are venued in Suffolk County and the Fifth Judicial District are not required to "go through the wait, expense, and prejudice of a [medical malpractice] panel proceeding...." The Gronnes also claim that section 148–a is facially unconstitutional because it provides for the panel to include a New York physician, who

assertedly will be inherently biased against medical malpractice claimants because of a putative pecuniary interest in the outcome of the litigation. This potential bias, according to the Gronnes, arises because some eighty percent of all physicians in New York State are insured by the same insurance company and all physicians so insured are shareholders in that company.

Chief Judge Weinstein rejected the Gronnes' constitutional claims and granted the Attorney General's motion to dismiss for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, we affirm.

## II. DISCUSSION

### A. *Equal Protection*

The Gronnes challenge two classifications created by section 148–a as violative of the equal protection clause of the fourteenth amendment. First, they claim the statute unfairly discriminates against all medical malpractice plaintiffs in New York vis-á-vis other tort or professional malpractice plaintiffs. Second, they allege that the statute violates the equal protection clause by abolishing medical malpractice panels in Suffolk County and the Fifth Judicial District. We find that neither of these statutory distinctions amounts to the sort of invidious discrimination prohibited by the fourteenth amendment, and thus we reject the Gronnes' equal protection challenges.

■ In the area of economic or social welfare, legislation not involving suspect classifications or touching on fundamental interests is presumed constitutional, and the courts require only that the distinctions drawn by the challenged statute be rationally related to a legitimate state interest or purpose. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The rational relationship standard of review reflects the judiciary's awareness that "it is up to legislatures, not courts, to decide on the wisdom

and utility of legislation." *Ferguson v. Skrupa*, 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963). Here, since section 148–a is solely a social regulation designed to address the "malpractice crisis," *Kletnieks v. Brookhaven Memorial Association, Inc.*, 53 A.D.2d 169, 172–73, 385 N.Y.S.2d 575, 578 (2d Dep't 1976), we are required to defer to the legislative choice, absent a showing that the legislature acted arbitrarily or irrationally.

■ As recently stated by the New York Court of Appeals, "Judiciary Law § 148–a represents a legislative response to a perceived problem of increasing malpractice rates and serves to better equip the parties to mediate a settlement, if warranted, and preserve quality health care for residents of New York." *Treyball v. Clark*, 65 N.Y.2d 589, 590, 493 N.Y.S.2d 1004, 1005, 483 N.E.2d 1136, 1137, (1985) (per curiam) (citation omitted); *see also Bernstein v. Bodean*, 53 N.Y.2d 520, 443 N.Y.S.2d 49, 426 N.E.2d 741 (1981); *Comiskey v. Arlen*, 55 A.D.2d 304, 390 N.Y.S.2d 122 (2d Dep't 1976); *Kletnieks*, 53 A.D.2d 169, 385 N.Y.S.2d 575; Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis*, 46 Fordham L.Rev. 322 (1977). The creation of medical malpractice panels unquestionably is rationally related to these state interests. Consequently, we reject the Gronnes' claim that section 148–a unfairly discriminates against medical malpractice plaintiffs.

■ Nor does the 1985 amendment to section 148–a, eliminating malpractice panels in Suffolk County and the Fifth Judicial District, render any more viable the Gronnes' equal protection challenge. In amending the statute, the legislature recognized that some evidence suggested that the panels were not contributing to case resolution. Thus, in order to test the efficacy of the panels in achieving the legislative goals, the legislature eliminated them in two geographic areas "to compare the disposition of the claims in similar areas where the panels are retained." Governor's Program Bill, Memorandum, 1985, N.Y.Law Ch. 294, at 7. Such testing of

legislative programs is entirely appropriate. *Cf. Dandridge,* 397 U.S. at 487, 90 S.Ct. at 1162 (state should not be required to "choose between attacking every aspect of a problem or not attacking the problem at all"). More important, the means chosen here—the creation of "control" areas to make comparison possible—are rationally related to the legislative purpose of testing the usefulness of these panels in resolving medical malpractice claims.

## B. *Right to a Jury Trial*

■ We also have little trouble rejecting the Gronnes' claims that section 148–a unconstitutionally restricts either their seventh amendment right to a jury trial or their due process right to access to the courts. First, the seventh amendment merely requires "that the ultimate determination of issues of fact by the jury be not interfered with." *In re Peterson,* 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920). Under section 148–a, the jury remains the final arbiter of factual questions raised at trial. The panel's recommendation, if unanimous and therefore admissible at trial, is in effect an expert opinion which is to be evaluated by the jury in the same manner as it would evaluate any other expert opinion. *Treyball v. Clark,* 65 N.Y.2d 589, 493 N.Y.S.2d 1004, 483 N.E.2d 1136 (1985) (per curiam).

■ More important, there is no general fundamental right of access to the courts; rather, the due process clause merely "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974).

■ A person's right to sue for personal injuries arising out of alleged malpractice is a common law right existing only insofar as it is recognized by the courts or by statute. The authority of the legislature to abolish entirely a common law right to sue, or, as here, to alter the procedures surrounding that right, is well established. *In re Peterson,* 253 U.S. at 309–11, 40 S.Ct. at

546; *Silver v. Silver,* 280 U.S. 117, 123, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929); *Meeker v. Lehigh Valley Railroad Co.,* 236 U.S. 412, 430, 35 S.Ct. 328, 335, 59 L.Ed. 644 (1915); *Munn v. Illinois,* 94 U.S. (4 Otto) 113, 134, 24 L.Ed. 77 (1876). As the Supreme Court stated in *Munn:*

> A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the Legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.

94 U.S. at 134.

For these reasons, a number of courts have rejected challenges to medical malpractice panels based on claims that such panels violated either the seventh amendment or a due process right of access to the courts. *E.g., Treyball,* 65 N.Y.2d 589, 493 N.Y.S.2d 1004, 483 N.E.2d 1136; *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146 (5th Cir.1981); *Hines v. Elkart General Hospital,* 603 F.2d 646 (7th Cir.1979); *Lacy v. Green,* 428 A.2d 1171 (Del.1981); *Paro v. Longwood Hospital,* 373 Mass. 645, 369 N.E.2d 985 (1977); *Comiskey v. Arlen,* 55 A.D.2d 304, 390 N.Y.S.2d 122 (2d Dep't 1976); Annot., 80 A.L.R.2d 583 (1977).

We need not address whether section 148–a might run afoul of the Constitution by preventing a medical malpractice plaintiff from instituting suit within a reasonable time or from ever bringing suit. We are aware that Mr. Gronne, who is eighty-one years old and in failing health, may never see the resolution of his claims. Already, the Gronnes' case has languished on the trial-ready list for more than thirty-one months awaiting the statutorily required review by a malpractice panel. This situation, however deplorable it might be, does

not rise to the level of a constitutional violation because New York's Article 78 procedure provides the Gronnes and other medical malpractice plaintiffs with a vehicle to obtain either an order dispensing with the malpractice panel requirement or the substitution of a physician from another county. We are confident that the state's judiciary will effectively resolve this problem once it is appropriately presented. It would be preferable perhaps if the state courts acted *sua sponte* to empanel a physician through extraordinary means when they encounter difficulties like those presented here, but such a practice is hardly required by the Federal Constitution.

Finally, there is no basis for the Gronnes' blanket assertion that all physicians who sit on medical malpractice panels will be biased because of pecuniary interest. Even accepting the Gronnes' assertion that eighty percent of all physicians in New York state are insureds of, and shareholders in, a single insurance company, it still is not inevitable that both the doctor assigned to a particular panel and the doctor or doctors being sued would be part of the eighty percent. Moreover, section 148–a provides that either party may object to the selection of the panel doctor. Whether or not the state would preclude a doctor from sitting on a panel if he truly had a direct pecuniary interest in the outcome of the case is not before us in this case. Suffice it to say that section 148–a does not inevitably result in the selection of doctors who have such an interest in the case, and therefore the Gronnes' facial constitutional challenge must be rejected.

### III. CONCLUSION

Accordingly, the judgment appealed from is affirmed.